## HARRELL et al. v. SUTER.

No. 13719—Opinion Filed June 17, 1924.

**1. Taxation—Registration of Notes for Taxation—Validity of Act.**

The Act of March 10, 1917, chapter 264, Session Laws 1917, scrutinized in the light of section 57, article 5, of Constitution of Oklahoma, and held not unconstitutional.

**2. Same—Action on Unregistered Note—Pleading and Evidence.**

Where suit is based upon a note, and the petition attaches copy which shows it to be of over eight months duration for sum of over $300 dated subsequent to March 10, 1917, and same is not registered and indorsed according to section 9608, Comp. Stat. 1921, and the petition shows the same does not belong to a bank or a note secured by real estate mortgage, the petition is subject to demurrer and such note is not competent evidence on trial of the case.

**3. Bills and Notes—Validity of Note Given by Assignee of Indian Land Lessee's Interests.**

Where S. was the owner of two departmental leases on lands of members of the Kiowa, Comanche, and Apache Tribes of Indians for the year 1920, and one of which is in force for the year 1921, and application for contract on the other is approved for the year 1921, and on January 5, 1921, before the lease was executed and the bond given, S. makes a contract with H., selling the cotton unpicked in the fields on said lands and all his interest in the leases for the year 1921, for the sum of $1,525, $325 being paid in cash, and the balance evidenced by note of $1,200, payable November 1, 1921, said contract being conditioned upon the approval and acceptance by the Indian agent of H. as the tenant instead of S., and the acceptance and approval of said agent being given and afterward put in writing, by indorsement on the lease contracts, and a new contract being dated March 1, 1921, and making the term of the lease for the year, beginning January 1, and ending December 31, 1921, held that the leases were valid and the contract for the note valid and binding on the defendant.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Cotton County; A. S. Wells, Judge.

Action by B. F. Suter against R. H. Harrell, T. C. Harrell, I. C. Harrell and G. A. Nelson. Judgment for plaintiff, and defendants appeal. Reversed and remanded for new trial.

Bridges & Vertrees and E. B. Anderson, for plaintiff in error.

Lon Morris and S. L. McElhoes, for defendant in errorr.

Opinion by THREADGILL, C. The plaintiffs in error were defendants and the defendant in error was plaintiff in the trial court, and they will be referred to here as they appeared there. The plaintiff brought suit against the defendants on a certain promissory note for $1,200, dated January 5, 1921, and due November 1, 1921, bearing 10 per cent. interest from date and providing for attorneys fees in the sum of $10, and 10 per cent. of the principal. There was no indorsement on the note as provided by section 9608, Comp. Stat. 1921, and the defendants demurred to the petition, which being overruled they filed an answer in which they neither admit nor deny the execution of the note. They state that if the execution is proven, the same is without consideration because given for a lease contract on lands belonging to the Kiowa, Comanche, and Apache Tribes of Indians, and against the public policy of the laws of the United States, and rules and regulations governing the leasing of lands belonging to the said tribes. The issues were tried to the court without a jury and the court gave judgment in favor of the plaintiff and the defendants appealed by petition in error and case-made, alleging several assignments of error, which are presented under two general propositions as follows:

"(1) The note sued upon was one for a duration of more than eight months and it was not shown that the tax required by section 6, Session Laws of 1917, had been paid.

"(2) The consideration for the note in whole or in part was invalid and illegal."

1. In the trial of the case the court allowed the plaintiff, over the objection of the defendants, to introduce the note as evidence, although there was no indorsement as provided by chapter 264, of the act of 1917, being sections 9608 to 9613, inclusive. Comp. Stat. 1921. The first section of this act reads as follows:

"Any person owning any bond, note of any duration of over eight months or other choses in action evidenced by writing located in the state of Oklahoma, may take same to the office of the county treasurer of the county in which the owner of said bond, note of a duration exceeding eight months, or other choses in action, resides or he may send a description of the same to said county treasurer, and pay to the said county treasurer a tax of two per centum of the face amount thereof for five years, or at the option of such person, for a greater or less number of years at the same rate, and the said county treasurer shall thereupon make an indorsement upon said bond, note of a duration of over eight months, or other choses in action, certifying that same is exempt from all taxation for state, county, city, town, township, school district and other municipal purposes for a period of five years, or for such longer or shorter period for which a proportionate tax has been paid, which indorsement or receipt shall be duly dated and signed in the name of the county treasurer of the county in which said property is located and where said tax is paid, and with the seal of the treasurer of said county affixed. Provided, the provisions of this act shall not apply to any property which under existing laws is not subject to taxation, and provided further, all property taxable under the provisions of this act and owned by a nonresident of the state of Oklahoma, shall be listed for taxes in the county in which such evidence of indebtedness is located; and provided, further, nothing in this act shall cause any part of the capital stock of a corporation to be exempt from taxation; and provided, further, the bonds, notes and other choses in action, evidenced in writing held by banking corporations which pay taxes on its capital stock, surplus and undivided profits, shall not be subject to the provisions of this act."

The defendants contend that the note was incompetent testimony under these provisions of the statutes, citing Wommer et al. v. Wommer, Adm'r, 91 Okla. 79, 216 Pac. 150, where it was held that such note was incompetent testimony, and they say the judgment based upon a petition that exhibited such a note and upon evidence showing such a note is erroneous.

The plaintiff, in meeting this issue, contends that the act invoked by the defendants is unconstitutional and void for the reason that the act provides for one method of paying taxes on notes and penalties for failure to comply by making the note incompetent as evidence, while the subject expressed in the title of the act shows the intention of the Legislature to be to provide an additional method of taxing notes, bonds, and choses in action, and to penalize the failure to pay either under the ad valorem method or the special method.

The title of the act is as follows:

"An act providing for the payment of a tax on choses in action. Exempting choses in action from other taxation, providing

means for the collection of said tax, and providing that choses in action in the State of Oklahoma, and declaring an emergency." conformity with this bill, or upon ad valorem basis, has no standing in the courts of Oklahoma, and declaring an emergency."

The contention of the plaintiff is based upon section 57, of article 5 of the Constitution, which reads as follows:

"Every act of the Legislature shall embrace but one subject which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest or revision of statutes; and no law shall be revived, amended or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revised, amended, extended, or conferred shall be re-enacted and published at length: Provided, that if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The question now to determine is whether or not the title to the act is in compliance with the provision of the Constitution. The subject of the act is to provide for payment of a tax on choses in action. This is expressed in the first declaration of the title. The other parts of the title are component parts of the subject. It is common knowledge that notes, bonds, and other choses in action, being private papers representing money value, were easily concealed, and had escaped taxation since statehood, and had not borne their part of the tax burden, and it was the intention of the Legislature to bring these property values under taxation by a special tax and a system of registration and penalty nullifying enforced collection or performance in the courts. There were certain choses in action, such as notes belonging to banks or notes secured by real estate mortgages, exempt from general taxation by being otherwise taxed, and it was one of the details of this special act to exempt them from this provision. The means of collecting the special tax and the penalty for nonpayment were details of the general subject. We do not see anything in these details out of harmony with the subject. Plaintiff claims that the expression in the title "providing that choses in action in the state of Oklahoma on which a tax is not paid in conformity with this bill or upon ad valorem basis," shows that it was the intention of the Legislature that the bill providing a penalty for not conforming to the provisions of the act should also include a penalty for not complying with the ad valorem method or the penalty should have been for not complying with one or the other, whereas the bill only provides for non-compliance with this act, and in this the constitutional requirement of the bill—embracing one subject which should be clearly expressed in its title— is violated.

It must be borne in mind that the act contained the emergency clause and was in full force and effect upon its passage on and after March 10, 1917, and at that time all choses in action included in the act were subject to taxation under the general tax provision, and it may be presumed that some of this property had been listed by honest law-abiding citizens, and the tax according to the ad valorem method would have to be paid accordingly, and the alternative in the title is in the nature of an exemption for all such choses as had been listed for taxes under the ad valorem method at the time the special act became effective. We cannot think that the act contemplated two methods of taxation. The alternative in the title does not apply to the method of listing the property for taxation but to the fact of payment of taxes as a prerequisite to legal standing in court, and evidently means that any choses in action, taxable by listing and assessment under the ad valorem system, would not be penalized for failure to comply with the provisions of the special act. Section 3 provides as follows:

"All property taxable under provisions of this act, shall be listed for taxation as provided for in section one, hereof, within sixty (60) days after this act becomes effective; provided, such property is now in existence, and all other property subject to taxation under the provisions of this act shall be listed for taxation as provided for herein, within sixty days from the date of execution of the evidence of such indebtedness."

This language is very plain and needs no illustrations or argument to bring out the meaning. All choses in action as defined in section 1, except the exemption, are included in this section, and there is no alternative in the requirement, but the requirement is not retroactive to include property listed for taxation under the method before this act becomes effective. We think this is plain from the language used in the section in the words "all other property subject to taxation under the provisions of this act." Any property already listed or upon which the tax had been paid up to the time of the act was not subject to taxation under the provisions of the act. And section 6 includes the same property and to the same extent as above defined. This construction harmonizes the provisions of the act with the facts and circumstances attending its passage.

Plaintiff, in support of his contention, cites the following cases: J. H. J. Holcomb v. C., R. I. & P. Ry. Co., 27 Okla. 667, 112 Pac. 1023; Hill et al. v. Hawkins, 29 Okla. 1, 115 Pac. 1014; Hurt v. Thompson, 29 Okla. 6, 115 Pac. 1016; In re Hickman, 63 Okla. 14, 162 Pac. 176; Johnson v. Grady County, 50 Okla. 188, 150 Pac. 500.

The rule insisted on in these cases is to the effect that it is a violation of section 57, of article 5, of the Constitution to insert in the body of the bill some provision not mentioned in the title or correlative to or following as a natural and legitimate complement to the subject expressed in the title, but these cases do not apply to the case at bar for the reason the objection made to the act under consideration is just the opposite to the objection in these cases. Instead of more being expressed in the act than was provided for in the title, the plaintiff complains there was less; that is, that the title provided for alternative assessment and payment of taxes for choses in action and penalty for not paying, by one or the other methods, and the body of the bill provided penalty only for failure to pay taxes under the special method. We do not think the complaint was well founded and if it were we cannot see how the rule in the above cases applies.

We think the rule laid down in the case of Wommer v. Wommer, 91 Okla. 79, 216 Pac. 150, should have been governed in the trial of the case, since it appears that the note offered in evidence was not registered in compliance with the act of 1917, and was for more than $300, and of more than eight months' duration, and was not owned by a bank nor secured by a real estate mortgage, and bears date subsequent to March 10, 1917.

2. We also think the act of March 10, 1917, should be applied to the pleadings, and since a copy of the note, as above described, was made a part of the petition the demurrer interposed by the defendants should have been sustained, and the court committed error in overruling the demurrer offered, and in allowing the note to be introduced as evidence.

3. The defendants further contend that the judgment is erroneous because the consideration for the note in whole or in part was invalid or illegal. The evidence in the case discloses that the plaintiff had two departmental leases for the year 1920 on certain lands belonging to Indians of the Kiowa, Comanche, and Apache tribes. The contracts were made through the Indian office at Anadarko. One of the leases was for the allotment of Elsie Satepauhoodle, deceased, and the heir was a minor, and the superintendent of the agency, at Anadarko, had authority to act for the minor.

The plaintiff, at the end of the year 1920, had made application for a renewal of this lease for the year 1921, and his application had been approved. The other lease was in full force for 1921. He had a crop of cotton on the lands during the year 1921, and at the end of the year there was considerable cotton unpicked. Plaintiff and the defendant R. H. Harrell entered into an agreement by which plaintiff was to sell to said defendant his interest in the leases for the year 1921, and the cotton in the fields for a consideration of $1,200, evidenced by the note above described and discussed, to be paid November 1, 1921, and $325 cash. In order to turn those leases to the defendant it was necessary to have the consent and approval of the Indian agent at Anadarko, and the plaintiff went to see the agent and represented to him that he desired to retire from farming and recommending that the defendant Harrell take his place in the lease contracts, the one already in force and the other to be executed, and the Indian agent consented and gave his approval, and the lease in which the application had been approved and the contract yet unexecuted was then completed by adding the name of Harrell with the plaintiff's name, and the defendant Harrell made the bond, and Harrell was to take the plaintiff's place in the contracts. It does not appear from the evidence that the plaintiff or any other person informed the superintendent of the agreement made between the plaintiff and Harrell. It appears that the note for $1,200 was made on January 5, 1921, and the lease contract substituting Harrell for the plaintiff was made March 1, 1921. About the time the note was made, the defendant took possession of the premises, and commenced gathering the cotton and paid the plaintiff $325 in cash on the contract and continued in possession of the premises during the year 1921, and when the note became due November 1, 1921, he failed and refused to pay the same, and this suit was brought against all the defendants because they signed the note. As we understand the defendants' contention, they do not insist that the lease contracts are void, but that the contract between the plaintiff and the defendant for the note was void because it was made without any consent or approval of the Indian agent to transfer the leases from the plaintiff to the defendant Harrell. Now if this agreement had been made and the defendant Harrell had taken possession of the premises without the consent of the Indian agent,

then this contract between the plaintiff and the defendant for $1,200, as evidenced by the note, would have been void, in violation of the laws, rules, and regulations of the department for the protection of these Indians, and the cases cited by the defendants would be clearly in point. McGreedy et al. v. Macklin et al., 12 Okla. 666, 72 Pac. 293; and cases therein cited, as well as section 5065, Comp. Stat. 1921; 5021, Comp. Stat. 1921; 5022, Comp. Stat. 1921; also Mann v. Brady, 80 Okla. 299, 196 Pac. 346.

But the facts are different in the case at bar. The contract between the plaintiff and the defendant was made and the Indian agent gave his consent to the transfer of plaintiff's interest in the leases, and defendant made the note January 5, 1921, and took possession of the premises, and the agreement and approval of the agent were put into writing by the execution of the lease contract March 6, 1921, stating the term for one year, beginning on the first day of January, 1921, and ending December 31, 1921. It would appear that the contract for the note was based upon the approval of the Indian agent for the transfer, and this approval was sufficient to validate the transfer of plaintiff's interest to the defendant as well as to validate the note contract. This would be just and right to all parties, and we cannot see where it would conflict with the statutes, rules, and regulations governing the estate of the Indians. We think the facts in the case are to be considered and the rights of the parties determined rather by the principles stated in the case of Dodder v. Moberly, 28 Okla. 334, 114 Pac. 714.

The lease contracts were not void, because they had the approval of the superintendent of the Indian agency, and we are of the opinion the note contract was valid and binding upon the defendants. We, therefore, recommend that the cause be reversed for a new trial, and in accordance with the principles herein stated.

By the Court: It is so ordered.