## CURRY et al. v. DeLANA.

No. 17549.   Opinion Filed Oct. 4, 1927.

(Syllabus.)

1. **Appeal and Error—Review—Overruling Motion to Vacate Judgment for Alleged Fraud of Attorney in Procuring it.**

Where a motion is filed to set aside and vacate a judgment because of alleged fraud of an attorney in procuring it, and the trial court upon a hearing of the motion found there was no fraud, his judgment will not be reversed on appeal unless it is against the weight of the evidence.

2. **Mortgages — Foreclosure — Burden of Proof Where Answer Admits Execution of Notes and Mortgage and Sets Up Affirmative Defense.**

Where, in a suit upon a promissory note and for foreclosure of a real estate mortgage given to secure the payment thereof, the execution of the note and mortgage is admitted in the answer of the defendant, and the answer in addition sets up defensive matter, it is not incumbent upon plaintiff to introduce any evidence to entitle him to judgment. The answer of the defendant set up an entirely affirmative defense, and the burden of establishing it was upon her.

Error from District Court, Canadian County; Lucius Babcock, Judge.

Action by John C. DeLana against Sierra N. Curry and another. Petition by defendants to vacate judgment in favor of plaintiff denied, and defendants bring error. Affirmed.

Warren K. Snyder and Edward C. Snyder, for plaintiffs in error.

H. L. Fogg, for defendant in error.

HEFNER, J. John C. DeLana, plaintiff below and hereinafter called plaintiff, sued Mrs. Sierra N. Curry, defendant below and hereinafter called defendant, upon a promissory note and to foreclose a real estate mortgage given to secure the same. Issues were joined and judgment rendered for the plaintiff on the 14th day of April, 1925.

In November, 1925, the defendant filed a petition to vacate and set aside the judgment. In her petition to set aside the judgment she charged that in the original case she appeared for the trial, and that she was advised by her attorney that the case could not be reached and for her to go home and for her witnesses to go home, and that her attorney stated he would communicate with her when the case was reached, and that in all probability it would be six months before the case could be tried. In the petition to set aside the judgment her attorney

was charged with bad faith and fraud in allowing the plaintiff to take judgment against her in the original suit.

After the court heard the evidence he refused to set aside the judgment, and in doing so used this language:

"The court understands that there is before the court, at this time, the matter of determining as to whether or not there was any fraud exercised on the part of the plaintiff, or by himself or in collusion with the attorneys for the defendant, and finds, as a matter of fact, that there was no fraud * * * exercised in the procurement of this judgment."

We have carefully read the evidence in this case, and think it reasonably supports the judgment of the trial court in finding that there was no fraud.

The judgment was taken on the 14th day of April, 1925, and on the 16th day of April, two days thereafter, the plaintiff wrote the defendant a letter which is as follows:

"Dear Mrs. Curry:

"In taking our judgment in the foreclosure of our mortgage. I agreed with your attorney that we would wait at least six months from the date of the judgment before the land would be sold, and that we would do everything in our power to assist in the sale of this land so you could get something out of it above our mortgage.

"I want to urge upon you to sell this farm at your earliest opportunity, because there is no question but what it would sell for more if you were able to find a buyer than to let it run until the land was sold by the sheriff, at which time it might not bring the amount of the mortgage. I am informed that Mr. Pitney, at the bank at Yukon had some one in view that wanted to buy it; it might be well to see him and see if his man has already purchased a farm. I would see all the real estate men there as soon as possible and see if you can't make an advantageous sale.

"As a further inducement for you to make all the effort you can to sell it now, if you can sell this farm before September 1, 1925, I will rebate you $500, five hundred dollars, from the amount of the judgment. This offer is made with the express understanding that you sell the land before September 1, 1925. I am always glad to make some concession to any one with whom I have done business as long as I have you and I was only compelled to bring this foreclosure as a last resort.

"Yours very truly."

And on the 18th day of April, 1925, four days after the judgment was taken, the attorney for the defendant wrote her a letter which is as follows:

"Dear Mrs. Curry:

"Mr. DeLana has talked to me about the sale of your farm. He says that there is a barber at Yukon that Mr. Pitney knows about and he offers a reduction if you sell before a certain time. I think it will be to your interest to make a sale and take advantage of his offer and also get what equity you can out of it.

"I found, upon looking up the books that we were not in position to make a successful defense, so I thought this was the best way out of it.

"Yours very truly."

Touching the question of fraud in the procurement of the original judgment, the testimony of defendant is as follows:

"Q. Where did you see your attorney? A. I saw him up in the courthouse there. Q. And what, if anything, did he say to you in the presence of this young man about your lawsuit? A. Why, he said, that they wouldn't be anything this evening; they had to look at the taxes and it would take quite a while to do it and I could go home and not come back until he called for me. Q. He said that there wouldn't be anything done, that he would have to look over the taxes? A. Yes, sir. Q. And for you to go home and stay there until he called for you? A. Yes, sir. Q. Did he ever call you? A. He never did; he wrote me a letter afterwards, I don't just remember how many days afterwards. Q. Were you here on that day, the 14th of April, 1925, ready for trial? A. Yes, sir. Q. Did he ever write you a letter and tell you that he had confessed judgment against you in favor of Mr. De-Lana? A. Yes, sir; I think that was the way it was written. Q. How? A. Yes, sir. Q. When did you know that he had permitted judgment to go against you? A. When Mrs. Arwood read it in the paper. Q. Did you get any communication from your attorney that he had confessed judgment or permitted judgment? A. Not until after we saw it in the paper, I didn't. Q. About when do you think you saw it in the paper? A. Well, I don't know, whenever the paper was issued. I don't remember."

The above is all of the testimony of the defendant in connection with the charge of fraud. The attorney for defendant denied any fraud or collusion whatever and testified that he explained the entire transaction to the defendant. The plaintiff, plaintiff's bookkeeper, and plaintiff's attorney all testified that there was no fraud or collusion.

That the plaintiff himself wrote the defendant a letter the second day after judgment was taken shows that he was not concealing anything from the defendant. The defendant testified that she had learned of the judgment through the paper before she received either of the letters hereinbefore set out. She must therefore have known of it within two days after the judgment was taken. No effort was made to set the judgment aside until November following the taking of the judgment in April. We think this evidence amply supports the court in his finding that there was no fraud.

It is contended by the defendant that the judgment in question was void, because it was entered with the consent of the attorney for the defendant, or was entered under such circumstances as amounted to a confession of judgment.

The attorney for defendant testified that he filed the answer with the understanding with the defendant that unless additional evidence be obtained she had no defense to the plaintiff's cause of action; that he stated to her that unless he could obtain evidence from the records of the books of the plaintiff, she had no defense, and that such an investigation would be made. Her attorney testified that he did make the investigation, and that nothing was found which would justify the defendant in going to trial; that thereupon he went into court with the attorney for plaintiff and stated that it was agreed that judgment might be entered for the plaintiff. The journal entry of judgment signed by the judge and approved by the attorneys for the plaintiff and defendant states that both parties appeared, announced ready for trial, the court proceeded to hear the testimony of witnesses, and no evidence being introduced on behalf of defendant, found for plaintiff.

The answer of the defendant admitted the execution of the note and the mortgage sued on. She, however, pleaded an affirmative defense and denied that she owed the plaintiff the amount sued on; alleged that certain payments had been made for which she had not been given credit; also alleged that the plaintiff had contracted for and received a large amount of usurious interest, which she pleaded as a set-off against the note sued on.

In the case of Johnson v. Young, 47 Okla. 741, 150 Pac. 664, suit was brought upon a promissory note and to foreclose a mortgage. The answer admitted the execution of the note, but alleged the signers of the note thought they were executing a note for $97.30, and the note sued upon showed it was for $260; that payments had been made to reduce the amount to $12.17. In the syllabus this court said:

"Where, in a suit upon a promissory note

and for the foreclosure of a real estate mortgage, given to secure the payment thereof, the execution and genuineness of the instruments is conceded by the defendants, and their answer sets up only defensive matter, the burden of proof is upon them to establish their defense; and it is error for the trial court to enter judgment in their favor, in the absence of any evidence by either party."

This court in the body of the opinion in the above case used this language:

"Under the state of the pleadings and the admission of counsel, it was not incumbent upon plaintiff to introduce any evidence in order to entitle him to judgment. The answer of defendant set up an entirely affirmative defense, and therefore the burden of establishing it was upon them."

Had the court found that the attorney for the defendant was guilty of fraud or bad faith in permitting the judgment to be taken against the defendant, it certainly would have been his duty to at once set the same aside. An attorney is an officer of the court and he must at all times exercise the best of faith in his dealings both with the court and with his client.

The answer admitted the execution of the note and mortgage. The trial court found there was no fraud. Under these conditions no error was committed in refusing to set the decree aside. The judgment of the trial court is therefore affirmed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, and CLARK, JJ., concur.

Note.—See under (1) 4 C. J. pp. 846, 847, §2831. (2) 27 Cyc. p. 1612.